(30)

FILED

DEC 1 7 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE
NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 08-10115-B-7 |
| MARTHA BARIGIAN, | Chapter 7 |
| Debtor | Adversary Proc. No. 10-01003 |
| JAMES E. SALVEN, CHAPTER 7 TRUSTEE, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| Plaintiff, | |
| v. | |
| WARREN BARIGIAN, | |
| Defendants. | |

## **INTRODUCTION**

Martha Barigian, Debtor in the above-captioned case, filed a Voluntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code on January 7, 2008.

On January 5, 2010, Plaintiff James E. Salven, Chapter 7 Trustee in this bankruptcy case, timely filed a Complaint alleging claims for fraudulent transfer, turnover, and preferential payments under 11 U.S.C. §§548(a)(1)(A) and (B), 547, 550, and 542. In addition, the Complaint alleged fraudulent transfer and constructive trust claims under California Civil Code §§ 3439.04-05, and 2223. Finally, the Complaint requests declaratory relief. The Plaintiff essentially claims to hold, for the estate, an interest in community property he alleges that the Debtor in this case conveyed to her estranged husband without receiving any value. On February 10, 2010, Defendant

1    Warren Barigian filed his answer to the Plaintiff's complaint.

2         The trial was held on November 5, 2012.  Plaintiff James E. Salven was

3    represented by Klein, Denatale, Goldner, Cooper, Rosenlieb & Kimball, LLP, by Connie

4    Parker, Esq.  Defendant Warren Barigian was represented by Wild, Carter & Tipton, by

5    Steven E. Paganetti, Esq.  At the close of evidence at trial the court requested submission

6    of proposed findings of fact and conclusions of law.  In addition, the court requested that

7    Plaintiff's counsel attempt to obtain records from the Debtor's 1994 bankruptcy case

8    pertaining to her characterization in those documents of the ownership of the real

9    property at issue in this adversary proceeding .  Thereafter, the court took the matter

10   under submission.  As explained in the following findings of fact and conclusions of law,

11   the court finds in favor of the Defendant in that the court is not persuaded that the

12   Plaintiff has met his burden of proof to show that the Debtor ever possessed an interest in

13   the subject real property.

14                              **JURISDICTION**

15        Jurisdiction exists under 28 U.S.C. §1334.  Venue is proper under 28 U.S.C.

16   §1409(a).  The District Court for the Eastern District of California has generally referred

17   these matters to the Bankruptcy Court for hearing pursuant to 28 U.S.C. §157(a) and the

18   United States District Court, Eastern District of California General Orders 182 and 223.

19   This is a core proceeding within the meaning of U.S.C. §127(b)(2)(A), (E), (f), (H) and

20   (O).  This is a complaint under  11 U.S.C. §§542, 544, 547, 548, 550, and 551, and

21   California Civil Code §3439, et seq.  An action by a trustee under 11 U.S.C. §544(b)

22   under state fraudulent conveyance law is a core proceeding.  Plaintiff James E. Salven is

23   the chapter 7 trustee in the bankruptcy case and has standing to bring this adversary

24   proceeding.

25   / / / / /

26   / / / / /

27   / / / / /

28   / / / / /

# FINDINGS OF FACT

**Background:**[1]

The Defendant, Warren Barigian (the "Defendant") is the estranged husband of the debtor, Martha Barigian (the "Debtor"). The couple was married in March 1985 and lived together in California at the real property at 4048 Hayvenhurst Avenue, Encino, California, the subject of this adversary proceeding (the "Hayvenhurst Property") until 1994 or 1995. When they married the Defendant held full title to The Hayvenhurst Property. There was more than one residence on the property and others, including Henry Barigian, the Defendant's brother ("Henry"), and the Defendant's mother also resided at the Hayvenhurst Property at times. (Trial Tr. 11:23-25, Nov. 5, 2012.) The Hayvenhurst Property was purchased by the Defendant and Henry in 1972 as tenants in common and Henry lived on the property from 1972-1995. In 1975 Henry conveyed his interest to the Defendant. Payments on the $73,600 purchase money loan were made from the Defendant's bank account.[2]

The Debtor actively invested in the real estate market and formed and managed numerous corporations and partnerships. (Trial Tr. 22:14; 22:22-23:3.) She filed bankruptcy twice during that time: in 1985 shortly after her marriage, and again in 1994. Although in the 1994 case, as in this bankruptcy case, several creditors filed complaints objecting to her discharge, she prevailed in each and obtained a discharge of her debts in both cases.

The Defendant was a highly compensated voice coach, however at some point

---

[1]In an earlier motion for summary judgment or adjudication, the following findings of fact were made: the Debtor did not have any legal title interest in the property; the Defendant obtained a $400,000 loan in his name only, secured by the Hayvenhurst Property, in 1988.

[2]Testimony conflicted as to whether the account was held jointly by the Defendant and Henry (per the Debtor's testimony), or by the Defendant alone (per Henry's testimony Trial Tr. 131:18-20, and the Defendant's testimony, Trial Tr. 135:9-12). The determination of that fact is not relevant to the conclusion.

3

during the marriage he ceased having any income except social security benefits. None of the income and assets of the Defendant and Debtor, other than the Hayvenhurst Property and the Defendant's pre-marriage checking account, were alleged to be separate property. In January 2008 the Debtor filed this petition in bankruptcy and scheduled an interest on schedule B, in the Hayvenhurst Property, which she valued at $1,000,000.[3]

**The Hayvenhurst Note and the First Quit Claim Deed (QCD I):**

Three years after the marriage, in 1988, the Defendant obtained a $725,000 appraisal of the Hayvenhurst Property and a $400,000 loan. The Defendant, representing himself as an "unmarried man," and in his name only, applied for the loan which was secured by the property (the "Hayvenhurst Note," Pl. Trial Ex. 17). The proceeds of the Hayvenhurst Note were deposited into the Defendant's bank account. These proceeds (the "Hayvenhurst Note Proceeds"), were used to retire a senior loan, to make at least up to eight payments on the loan, to improve the Hayvenhurst Property, and were invested in other transactions. (Trial Tr. 29:18-31:4; 64:22-64:15.)

The Debtor managed the household finances and the community checking accounts connected with their various business enterprises; she did not control the Defendant's pre-marriage separate checking account.[4] (Trial Tr. 63:24-64:6.)    In her deposition she testified that she had possession of a check register that itemized the deposits to the joint account held by the Defendant and Henry as well as the withdrawals and use of the funds withdrawn. However, such a register was not produced at trial and the Debtor's trial testimony was, that she had only possessed a few pages from those bank books. (Trial Tr. 66:19-67:18; 67:20-69:21.)

---

[3]The Debtor also claimed an interest in a settlement of an alleged law suit against the realtor involved in the sale of The Hayvenhurst Property, however no credible interest regarding the existence or amount of any such suit was introduced at trial.

[4]The Debtor did not claim any separate property interest in any of the assets. The Defendant did not claim any separate property in any asset except those related to the Hayvenhurst property.

4

The Debtor made at least one payment on the Hayvenhurst Note from one of the community accounts. The Plaintiff produced a single check numbered 1218 and dated May 16, 1995, in the amount of $5,261, representing a payment on the Hayvenhurst Note. The Debtor testified that she had no knowledge of any payments made by Henry prior to the execution of a quit claim deed conveying to Henry a partial interest in the Hayvenhurst Property, *infra*. However, Henry produced a copy of a check representing a payment on the Hayvenhurst Note that was dated January 11, 1992. He also produced copies of checks for a payment on the Hayvenhurst Note and for expenses related to the Hayvenhurst Property that were dated after the Debtor and Defendant executed an August 2001 quit claim deed conveying a portion of the Hayvenhurst Property to Henry (the "QCD I, Pl. Trial Ex. 9).[5]  Thereafter, Henry made the payments on the Hayvenhurst Note as well as paying the property taxes and other maintenance expenses.

**The Students Loans:**

In 1994, after an automobile accident, the Debtor and Defendant obtained loans from two of the Defendant's students, Bill Bokovoy, for $25,000, and another, unnamed, individual for $7,500 (the "Students Loans"). Living expenses as well as payments on the Hayvenhurst Note were made from these funds. (Trial Tr. 37:17-19; 71:25.) Henry produced a copy of a check dated April 22, 2007, in the amount of $43,340  payable to Bill Bokovoy representing repayment of that loan with interest. (Trial Tr. 125:25-126:12.)

**The Debtor's Prior Bankruptcy Cases:**

The court takes judicial notice of the documents filed with the bankruptcy court in the San Fernando Valley Division of the Central District of California in connection with the Debtor's 1994 bankruptcy case 1:94-bk-14622-GM (Exhibit A). This 1994 case was the Debtor's second, the first being filed in 1985 shortly after the Debtor's and

---

[5]The QCD I says 1/2, but in testimony the Debtor explained that the actual interest conveyed was 1/3 because another parcel was involved.

Defendant's marriage. In the 1994 case the Debtor amended her schedules twice. None of the versions of schedules A or B indicated any interest in any real property, including the Hayvenhurst Property, neither was any personal property interest in the Hayvenhurst Property listed. The Debtor's original 1994 schedule J showed expenses of $450 rent/mortgage and $50 for maintenance expenses. Both of the amended schedules J listed $500 as rent or mortgage and $0 for maintenance expenses.

**Improvements to The Hayvenhurst Property:**

Improvements were made to the Hayvenhurst Property, however testimony related to those improvements was conflicting as to whether they were paid for by the community or by Henry, who lived on the property from 1972 until 1995. (Trial Tr. 127:10-11.) No reliable or documentary evidence of the improvements, their cost, or how they were funded, was introduced, nor whether they were made before or during the Debtor's marriage. While the Debtor testified that she paid for improvements (Trial Tr. 1:15-42-17), Henry testified that she did not (Trial Tr. 27:12-14), but that he had done so (Trial Tr. 126:15-127:20).

**The Second Quit Claim Deed (QCD II):**

In December 2006, in connection with the Debtor's petition for dissolution, the Debtor executed a quit claim deed (the "QCD II," Pl. Trial Ex. 12) permitting the sale of the Hayvenhurst Property in a tax-free exchange under IRC §1031. Pursuant to the order, the Debtor did not waive "any right or interest [she] may have in said Hayvenhurst property should a tracing and accounting provide that there is a community interest in said Hayvenhurst property." (Pl. Trial Ex. 10, 2:5-7.)

**Sale of The Hayvenhurst Property:**

In 2007 the Hayvenhurst Property was sold for $3.7 million dollars (the "Hayvenhurst Sale Proceeds"), from which funds the Hayvenhurst Note was satisfied by a payment of $241,811.29, evidencing a total principal reduction in the Hayvenhurst Note from the initial loan date to the date of sale in the amount of $158,188.71. In addition, *inter alia*, the following amounts were disbursed:

6

| | | |
|---|---|---|
| Payoff of Loan: Charrow and Slee Trust Account and interest: | $ | 38,545 |
| Commission: | $ | 185,000 |
| Title Charges: | $ | 30,004 |
| Escrow Fees: | $ | 7,010 |

After the costs of sale and expenses, the Hayvenhurst Sale Proceeds were used by the Defendant and Henry to purchase other properties.

**State Court Civil Law Suit Settlement:**

No reliable evidence was produced to show either the existence or the amount of any civil litigation or settlement of this claim referred to in the complaint.

## CONCLUSIONS OF LAW

The Plaintiff's complaint lists nine claims for relief, including fraudulent transfer, avoidance of a preferential payment, turnover of property of the estate, and constructive trust. The Plaintiff's claims depend upon the Debtor having an interest in the Hayvenhurst Property at the time she filed her bankruptcy petition or during the avoidance period prior to filing. While the Plaintiff's ability to recover such an interest in the context of the Debtor's bankruptcy case rests in bankruptcy law, the determination of that community interest is defined by California state law.

The threshold issue, however, resides in the Plaintiff's claim for declaratory relief. In order for the Plaintiff to prevail on any of his claims the court must find that the Debtor possessed some interest in the Hayvenhurst Property either at the time she filed her petition or, at least, at the time she executed the QCD II. On this, as on each of the other claims for relief, the Plaintiff bears the burden of proof. The Plaintiff must prove, by a preponderance of the evidence, each of the elements of his claim.

In his claim for declaratory relief, the Plaintiff asks the court to find that the estate, through the Debtor, holds an interest in the Hayvenhurst Sale Proceeds.[6] The Plaintiff

---

[6]While the Plaintiff also claims an interest in the proceeds from the real estate litigation, no credible evidence of that litigation or settlement was introduced.

7

1  contends, first, that the estate holds a one-third ownership interest of the Hayvenhurst

2  Property pursuant to transmutation of the property from separate to community.

3  Alternatively, the Plaintiff asks the court to find that, while the Hayvenhurst Property was

4  the Defendant's separate property, the estate holds a community property interest in the

5  Hayvenhurst Sale Proceeds based on principal reduction of the Hayvenhurst Note.

6  Because the court cannot find that the Plaintiff has met his burden of proof on these

7  issues, the Plaintiff must lose on his remaining claims.

8  **The Hayvenhurst Property is Properly Characterized as the Defendant's Separate**

9  **Property:**

10      In California there are two categories of ownership by married people: the separate

11  property of each, and community property of both.[7]  The separate property of a married

12  person includes all property owned before marriage and the rents, issues, and profits,

13  including appreciation of value, of all such property.  Cal. Fam. Code § 770(a).  The

14  property held by one spouse before marriage is presumed to remain separate property.

15  The character of property as separate or community is determined by the time and manner

16  of its acquisition and is fixed as of the time it is acquired until it is changed in some

17  manner recognized by law.  *Palen v. Palen*, 28 Cal. App. 2d 602, 83 P.2d 36 (3d Dist.

18  1938).  It does not change its character as a result of marriage or mere use in marital

19  relationship.  The expenditure of community funds for the improvement of separate

20  property of one of the spouses does not affect the character of that property.  The

21  improvements have the character of the separate property and belong to its owner.

22  *Spreng v. Spreng*, 119 Cal. App. 155, 6 P.2d 104 (3d Dist. 1931) (unless agreed

23  differently, the character of separate property is not changed by spending community

24  funds for its improvement); *Belmont v. Belmont*, 188 Cal. App. 2d 33, 10 Cal. Rptr. 227

25  (4th Dist. 1961).

26

27

28

---

[7] The following statements are in the absence to an agreement, in the case of real property, written, to the contrary.  Case citations omitted.

8

1    By agreement married persons may transmute separate property into community

2  property, and vice versa. Pursuant to Cal. Fam. Code §852, since January 1, 1985, any

3  transmutation of real property "is not valid unless made in writing by an express

4  declaration approved by the adversely affected spouse." *In re Marriage of Benson*, 36 .

5  Cal.4th 1096, 1100 (Cal., 2005).[8] The "express declaration" of that code section is

6  satisfied "only if it states on its face that a change in the character or ownership of the

7  subject property is being made." *Id.*, internal citations omitted. The use of "extrinsic

8  evidence" to show that a writing effected a transmutation is precluded. *Id.*

9    The Debtor and Defendant were married in March 1985, thus, Cal. Fam. Code

10 § 852 applies to this case. Because sufficient evidence of transmutation from the

11 Defendant's separate property to community property was not produced, the only interest

12 in the Hayvenhurst Property that Debtor could possess is a *pro tanto* community interest

13 based on the use of community funds to reduce the principal of the Hayvenhurst Note and

14 its proportional appreciation pursuant to a state common law algorithm.

15    The Plaintiff's allegation, that the Defendant's separate property interest in the

16 Hayvenhurst Property was transmuted to community interest, is without merit. He

17 supports his contention with the Debtor's testimony that the Defendant told her that she

18 owned one-half of the property and also by the Debtor's execution of QCD I. It is

19 uncontroverted that the Defendant entered the marriage holding the Hayvenhurst Property

20 as his separate property. In the absence of a written document satisfying the requirements

21 of Cal. Fam. Code §852, the court cannot find that the Hayvenhurst Property was thus

22 transmuted.

23 **Pro Tanto Community Interest:**

24    The only relevant issues in determining whether or not the estate has an interest in

25 the Hayvenhurst Property are:  whether or not the community reduced the principal

26

27    [8]Cal. Fam. Code §852(a) states: "A transmutation of real or personal property is not valid
   unless made in writing by an express declaration that is made, joined in, consented to, or
28 accepted by the spouse whose interest in the property is adversely affected."

9

balance of the Hayvenhurst Note; and, if so, by how much; the value of the property at the time of marriage; and, the value of the property at the time of the divorce or separation.

The California common law formula for determining the community interest portion of separate property where a loan has been paid for with community funds requires determination of three specific numbers. The first of those is, the total amount of principal reduction attributable to payments from community funds. The second is, the value of the property at the time of the marriage; the third is, the value at the time of divorce or separation – in other words, the amount of appreciation in value during the relevant time periods.

**No Presumption that Appreciation of The Hayvenhurst Property Belonged to the Community:**

The general presumption and burden of proof related to the characterization of property acquired during marriage as community property does not apply to property owned separately before marriage. Here, the Plaintiff bears the burden of proving that the appreciation of the Hayvenhurst Property accrued to the community. *In re Ney's Estate,* 212 Cal.App.2d 891, 895 (Cal.App.,1963) ('issues and profits from separate property and the increase in value thereof are separate property under Civil Code, § 163, *Huber v. Huber, supra,* 27 Cal.2d 784, 167 P.2d 708; and as such are not subject to the community property presumption under Civil Code, § 164.' (*Mears v. Mears,* (1960), 180 Cal.App.2d 484, 506, 4 Cal.Rptr. 618, 632.)).

In *Ney,* the husband owned separate property when the couple married. During the course of the marriage he used his personal efforts to manage and increase the value of the separate property. The court explained that the husband's personal efforts were contributions by the community to the value of the property. However, "[t]here is no apportionment where the increase in value or income is attributable solely to the natural enhancement of the property. *Id.,* citations omitted. In the case at hand, there was little or no credible evidence as to if, or how much, the community contributed to the principal reduction of the Hayvenhurst Note.

10

**The Proceeds from Hayvenhurst Note was not Community Property:**

The community property presumption also does not apply to the proceeds of a loan to one spouse, where the intent of the lender is to rely of that spouse for repayment. Where the loan is secured by the spouse's separate property, the proceeds of the loan are conclusively separate property. Cal. Fam. Code § 770(d). Even if the presumption, that the proceeds of loans obtained during marriage are community property, did apply to the Hayvenhurst Note, this presumption may be rebutted by evidence that the lender relied only on that party's assets or income. In this case the Defendant held himself out to be a single individual. That representation, albeit false, coupled with the fact that the $400,000 loan was secured by the Defendant's separate property freshly appraised at more than double that amount, persuades the court that the lender's intent was to rely on the Defendant's separate property. The fact that the loan may also have been secured by a deposit account, or that the Defendant's income was community property, did not affect the *lender's intent* when the lender believed the borrower to be unmarried. Therefore, the court is persuaded that the proceeds of the loan, which were not commingled with community funds, was the Defendant's separate property.

**The Proceeds from the Students Loans was Community Property:**

The presumption, that the proceeds of loans are community property, does apply to the Students Loans. In this case, the only evidence as to the existence or amount of these loans was the contradictory testimony of the Debtor and the Defendant, the testimony of Henry, and the copy of his cancelled check written to one of those students, Bill Bokovoy. The court cannot find sufficient evidence as to the existence, amounts, or use of these loans to conclude that they were used in any specific amount to reduce the principal on the Hayvenhurst Note.

**Expert Testimony by Mr. Heberger:**

The role of the Plaintiff's expert witness was to calculate any *pro rata* community interest in the Hayvenhurst Property. For several reasons the court did not find Mr. Heberger's testimony to be helpful. He neither requested nor examined any documents

11

1  showing payments on the Hayvenhurst Note from property of the community. He

2  purported to calculate the community interest from the time period of 1988 through

3  September 2001. Trial Tr. 114:25-115:2. His computational conclusions were partially

4  based on assumptions, some of which contradict facts in evidence. For example, while he

5  assumed that all of the principal reduction during the relevant time period was attributable

6  solely to the community, at least some of the payments in reduction of the Hayvenhurst

7  Note principal were made by a third party as well as from the Defendant's separate

8  property. Although Mr. Heberger was not qualified as a real estate appraiser, Trial Tr.

9  113:23-24, he made forensic estimations and assumed a value for the Hayvenhurst

10 Property at the time of marriage based on its value three years later when the it was

11 appraised. He also estimated and assumed a value at the time of the QCD I:

12 "I have a known beginning value of $725,000, and a known concluding value of

13 $3,700,000. So, in estimating the amount of value at the date of [the QCD I], since I did

14 not have a separate appraisal as of that date, I did an extrapolation using two separate

15 methods to arrive at the approximate appriased value, or fair market value at the date of

16 the [QCD I]. The two methods I used, one I refer to as an 'internal rate of return

17 method," which assumes - - it calculates a rate of appreciation from the date of the loan

18 through the date of sale, and applies that constant rate of appreciation from the date of

19 financing up through the date of the [QCD I]. That was method one."

20      "Method two, I just used a straight line. I determined what the average daily

21 depreciation was from the date of the loan through the date of the sale, and applied that to

22 - - based on the number of days elapsed from the [date of the financing] through the date

23 of the [QCD I], and just added that daily appreciation to the original value. So I arrived at

24 two separate numbers through two methodologies, an interest methodology and a straight

25 line methodology, and I averaged the results of those two." Trial Tr. 99:24-100:21.[9]

26

27      [9]The court notes that Mr. Heberger's methodologies do not account for the volatility of

28 the real estate market during the few years prior to the sale of the Hayvenhurst property in 2007.

12

As to the calculation of the principal reduction attributable to the community, Mr. Heberger stated: "Well, I computed the principal reduction based on the change in loan balances between the original loan and the balance of the loan at the close of escrow. And I utilized an Excel spread sheet function that calculates cumulative principal reduction between stated dates to arrive at the [amount of principal reduction at the time of the QCD II]." Trial Tr. 105:23-106:3.  In response to questions of how evidence that the principal had been reduced by payments from third parties, Mr. Heberger plugged in alternative numbers and suggested alternate values for the community interest, however there was no offer of proof that any particular amount was correct.

## DISCUSSION

The evidence presented at trial was underwhelming.  While the Plaintiff's primary witness, the Debtor, appeared to be a very savvy business woman with experience forming and operating multiple business entities simultaneously, documentary evidence was sparse to none in key areas in dispute.  A copy of a single check was presented as representing a payment from community funds on the Hayvenhurst Note.  The Debtor testified during her deposition that she possessed bank account registers for the account allegedly held by the Defendant and Henry that showed how the proceeds of the Hayvenhurst Note were used.  This evidence was never produced during discovery, however, and the Debtor contradicted her earlier testimony, claiming to have only possessed a few pages from the bank registers.

The Debtor's testimony, that she made the payments on the Hayvenhurst Note because the Defendant told her that she owned one-half of the property, is not persuasive evidence either that she believes that she holds such an interest or that she made the payments at issue.  The Plaintiff argues that since the couple was in a fiduciary relationship the court should enforce that representation.  The court notes that at the same time the Debtor claims to have believed she held an ownership interest in the Hayvenhurst Property, she executed bankruptcy documents under penalty of perjury that she had no interest in any real property.  She also did not she list any personal property

13

interest related to the Hayvenhurst Property. In addition, in contrast to the thousands of dollars each month she claims she was spending on payments on the Hayvenhurst Note, Trial Tr. 32:15, she listed rent or mortgage expenses of $500 on her 1994 amended schedule J.[10] Moreover, the specific requirements of Cal. Fam. Code §852 dictate the evidence required for transmutation of separate property to community status–requirements which here have not been met.

The Debtor's testimony as to the funds spent on renovation of the Hayvenhurst Property were inconsistent with the testimony of Henry. While specific, the Debtor's testimony was impeached by prior testimony on more than one occasion. The court is not persuaded that community property was used to make improvements to the Hayvenhurst Property.[11]

The Plaintiff's argument appears to be: the signature of a property owner is required to be on a deed to convey ownership; the Debtors signature was on the QCD I; therefore, the Debtor was an owner of the property. His conclusion is invalid. By law, a quit claim deed can only convey whatever interest held by the signatory. *Littlefield v. Perry,* 88 U.S. 205, 217 (1874).

As to the Plaintiff's allegation that the estate holds an interest in the civil law suit proceeds since the Defendant "did not present evidence to rebut that he received at least $1,000,000 in settlement funds," the court notes that the Plaintiff presented no credible evidence of any such settlement. There was no documentary evidence of such a suit or settlement. The Debtor testified from hearsay, and not personal knowledge of such a suit and settlement.

---

[10]The court can infer that the amendment of the Debtor's 1994 schedule J to show rent/mortgage payments of $500 per month, and $0 maintenance costs, to replace payments of $450 and maintenance payments of $50, was in light of an objection by the trustee to property maintenance expenses since the Debtor claimed no real property ownership.

[11]The Debtor's testimony as to her multitude of bank accounts and related entities was incomprehensible to the court.

14

1    The testimony from the Plaintiff's expert regarding the Moore-Marsden Rule,

2    while informative, did not prove how the rule should be applied in meeting the Plaintiff's

3    burden of proof.  Mr. Heberger explained the common law algorithm used in cases such

4    as this, however his conclusions were based on assumptions which were either not

5    supported by, or in direct contradiction to, the evidence presented at trial.

6         The Plaintiff's claims for fraudulent transfer pursuant to California state and

7    bankruptcy law is made moot by the court's determination that the Debtor had no interest

8    in the Hayvenhurst Property at any relevant time including at the time the QCD II was

9    executed.  In addition, the QDC II could not have conveyed anything to the Defendant in

10   that the Debtor retained any interest.  However, the fact that the stipulation and order

11   provided for the Debtor's retention of a community interest should a "tracing and

12   accounting" so prove does not show that such an interest exists.  The same conclusion

13   applies with regard to the Plaintiff's claim for setting aside a preferential payment,

14   turnover, and imposition of a constructive trust.

15                        **CONCLUSION**.

16        In that the Plaintiff did not meet his burden of proving, by a preponderance of

17   evidence, that the Debtor ever held an interest in the Hayvenhurst Property, the court

18   finds in favor of the Defendant.  For that reason also, the Plaintiff's remaining claims for

19   relief are moot.

20        The Defendant requested attorney's fees in his proposed findings of fact and

21   proposed judgment and in his answer; the Plaintiff requested only costs.  However, there

22   is no authority to grant attorney's fees to anyone in this case.  Therefore, each party is to

23   bear their own fees and costs.

24        Date: December 17, 2012.

25

26

27        Richard T. Ford, Judge
          United States Bankruptcy Court

28

                              15

In re: _Martha Jean Barigian_ _____/ Debtor     Case No.

## SCHEDULE A - REAL PROPERTY

| Description and Location of Property | Nature of Debtor's Interest in Property | H W J C | Market Value of Debtor's Interest | Amount of Secured Claim |
|---|---|---|---|---|
| NONE | | | Total $ 0.00 | |

Exhibit "A"                    Schedule A - page 1 of 1

In re: *Martha Jean Barigian* _____/ Debtor    Case No. ____

## SCHEDULE B - PERSONAL PROPERTY

| Description of Property | Location | H W J C | Market Value of Debtor's Interest Before Claim |
|---|---|---|---|
| 1. Cash on hand. <br> *Misc Cash* | | | $ 1,000 |
| 2. Checking, savings or other financial accounts, certificates of deposits or shares in banks, savings, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. <br> [x] NONE | | | |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. <br> [x] NONE | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. <br> *Misc. Household Goods* | | | $ 1,500 |
| 5. Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. <br> [x] NONE | | | |
| 6. Wearing apparel. <br> *Misc.Clothing* | | | $ 1,200 |
| 7. Furs and jewelry. <br> *Misc. Jewelry* | | | $ 750 |
| 8. Firearms and sports, photographic, and other hobby equipment. <br> [x] NONE | | | |
| 9. Interests in insurance policies. <br> [x] NONE | | | |
| 10. Annuities. <br> [x] NONE | | | |
| 11. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. <br> [x] NONE | | | |
| 12. Stock and interests in incorporated and unincorporated businesses. <br> [x] NONE | | | |

2

Schedule B - page 1 of 3

In re: *Martha Jean Barigian* _____ / Debtor    Case No. ___

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Description of Property | Location | H W J C | Market Value of Debtor's Interest Before Claim |
|---|---|---|---|

13. <u>Interests in partnerships or joint ventures</u>.
    [x] NONE

14. <u>Government and corporate bonds and other negotiable and non-nego-
    tiable instruments</u>.
    [x] NONE

15. <u>Accounts receivable</u>.
    *800 Booths*                                                     $ 40,000

16. <u>Alimony, maintenance, support, and property settlements, to which
    the debtor is or may be entitled</u>.
    [x] NONE

17. <u>Other liquidated debts owing debtor including tax refunds</u>.
    [x] NONE

18. <u>Equitable and future interests, life estates, and rights of power
    exercisable for the benefit of the debtor other than those
    listed in Schedule of Real Property</u>.
    [x] NONE

19. <u>Contingent and non-contingent interests in estate of a decedent,
    death benefit plan, life insurance policy, or trust</u>.
    [x] NONE

20. <u>Other contingent and unliquidated claims of every nature, including
    tax refunds, counter claims of the debtor, and the rights to
    setoff claims</u>.
    [x] NONE

21. <u>Patents, copyrights, and other intellectual property</u>.
    [x] NONE

22. <u>Licenses, franchises, and other general intangibles</u>.
    *Business Lic (cost)*

23. <u>Automobiles, trucks, trailers, and other vehicles and accessories</u>.
    [x] NONE

24. <u>Boats, motors, and accessories</u>.
    [x] NONE

*3*

Schedule B - page 2 of 3

In re: *Martha Jean Barigian* _____ / Debtor   Case No.

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Description of Property | Location | H W J C | Market Value of Debtor's Interest Before Claim |
|---|---|---|---|
| 25. <u>Aircraft and accessories</u>.<br>    [x] NONE | | | |
| 26. <u>Office equipment, furnishings, and supplies</u>.<br>    *3 Desks Files & Safe* | | | $ 1,000 |
| 27. <u>Machinery, fixtures, equipment, and supplies used in business</u>.<br>    [x] NONE | | | |
| 28. <u>Inventory</u>.<br>    [x] NONE | | | |
| 29. <u>Animals</u>.<br>    [x] NONE | | | |
| 30. <u>Crops - growing or harvested</u>.<br>    [x] NONE | | | |
| 31. <u>Farming equipment and implements</u>.<br>    [x] NONE | | | |
| 32. <u>Farm supplies, chemicals, and feed</u>.<br>    [x] NONE | | | |
| 33. <u>Other personal property of any kind not already listed</u>.<br>    [x] NONE | | | |

Total      $ 45,450

4

Schedule B - page 3 of 3

In re: _Martha Jean Barigian_ _____ / Debtor    Case No.

### SCHEDULE J-CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

[ ] Check this box if a joint petition is filed and debtor's spouse maintains a separate
    household. Complete a separate schedule of expenditures labeled "Spouse".

| | |
|---|---:|
| Rent or home mortgage payment (include lot rented for mobile home) | $    450.00 |
| Are real estate taxes included?    Yes___    No_x_ | |
| Is property insurance included?    Yes___    No_x_ | |
| Utilities:Electricity and heating fuel | $    150.00 |
|        Water and sewer | $    50.00 |
|        Telephone | $    150.00 |
|        Other | $    0.00 |
| Home maintenance (repairs and upkeep) | $    50.00 |
| Food | $    350.00 |
| Clothing | $    50.00 |
| Laundry and Dry cleaning | $    15.00 |
| Medical and Dental expenses | $    50.00 |
| Transportation (not including car payments) | $    150.00 |
| Recreation, clubs, and entertainment, newspaper, magazines, etc. | $    100.00 |
| Charitable contributions | $    0.00 |
| Insurance (not deducted from wages or included in home mortgage payments) | |
|        Homeowner's or renter's | $    0.00 |
|        Life | $    0.00 |
|        Health | $    0.00 |
|        Auto | $    0.00 |
|        Other | $    0.00 |
| Taxes (not deducted from wages or included in home mortgages) | $    0.00 |
| Installment payments: | |
|        Auto | $    0.00 |
|        Other | $    0.00 |
| Alimony, maintenance, and support paid to others | $    0.00 |
| Payments for support of additional dependents not living at your home | $    0.00 |
| Regular expenses from operation of business, profession, or farm | |
| (attach detailed statement) | $ 54,800.00 |
| Other | $    0.00 |
| TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules) | $ 56,365.00 |

5

In re: **BARIGIAN, MARTHA JEAN**
_____
Debtor

Case No. (if known)

## SCHEDULE A - REAL PROPERTY

| Description and location of property | Current market value of debtor interest in the property without deducting any secured claim or exemption |
|---|---|
| Nature of debtor's interest in property | Amount of secured claim |

*None*

6

**Total:**                    *0.00*

In re: **BARIGIAN, MARTHA JEAN**

<u>Debtor</u>                                                                 <u>Case No. (if known)</u>

## SCHEDULE B - PERSONAL PROPERTY

| Type of property | Current market value of debtor's interest in property without deducting any secured claim or exemption |
|---|---|
| Description and location of property | |

**1.** **Cash on hand.**
*None*

**2.** **Checking, savings, or other financial accounts, certificates of deposits, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives.**
*None*

**3.** **Security deposits with public utilities, telephone companies, landlords, and others.**
*None*

**4.** **Household goods and furnishings, including audio, video, and computer equipment.**

*ASSORTED USED FURNITURE*            Debtor interest:        *1,500.00*
**Owner:** *Debtor*
**Location:** *In debtor possession.*

**5.** **Books, pictures, and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles.**

*ASSORTED USED QUILTS*            Debtor interest:        *1,500.00*
**Owner:** *Debtor*
**Location:** *In debtor possession.*

**6.** **Wearing apparel.**

*ASSORTED USED CLOTHING*            Debtor interest:        *500.00*
**Owner:** *Debtor*
**Location:** *In debtor possession.*

**7.** **Furs and jewelry.**
*None*

**8.** **Firearms and sports, photographic, and other hobby equipment.**
*None*

**9.** **Interests in insurance policies.**
*None*

**10.** **Annuities.**
*None*

**11.** **Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans.**
*None*

**12.** **Stock and interests in incorporated and unincorporated businesses.**
*None*

7

In re: *BARIGIAN, MARTHA JEAN*
_____
Debtor                                                    Case No. (if known)

13. **Interests in partnerships or joint ventures.**
    *None*

14. **Government and corporate bonds and other negotiable and non-negotiable instruments.**
    *None*

15. **Accounts receivable.**
    *None*

16. **Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled.**
    *None*

17. **Other liquidated debts owing debtor including tax refunds.**
    *None*

18. **Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property.**
    *None*

19. **Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust.**
    *None*

20. **Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.**
    *None*

21. **Patents, copyrights, and other intellectual property.**
    *None*

22. **Licenses, franchises, and other general intangibles.**
    *None*

23. **Automobiles, trucks, trailers, and other vehicles or accessories.**
    *None*

24. **Boats, motors, and accessories.**
    *None*

25. **Aircraft and accessories.**
    *None*

26. **Office equipment, furnishings, and supplies.**
    *None*

27. **Machinery, fixtures, equipment, and supplies used in business.**
    *None*

28. **Inventory.**

In re: *BARIGIAN, MARTHA JEAN*

_____     _____
Debtor                                              Case No. (if known)

    *None*

**29. Animals.**
    *None*

**30. Crops - growing or harvested.**
    *None*

**31. Farming equipment and implements.**
    *None*

**32. Farm supplies, chemicals, and feed.**
    *None*

**33. Other personal property of any kind not already listed.**
    *None*

9

**Total:**    *3,500.00*

**Page 3**

In re: **BARIGIAN, MARTHA JEAN**

Debtor             Case No. (if known)

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTORS

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete and label a separate schedule of expenditures.

| | | |
|---|---|---:|
| Rent or home mortgage payment (include lot rented for mobile home) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **500.00** |
|    Are real estate taxes included?    Yes_____   No_✓_ | | |
|    Is property insurance included?    Yes_____   No_✓_ | | |
| Utilities:    Electricity and heating fuel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **25.00** |
|               Water and sewer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **125.00** |
|               Telephone . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **200.00** |
|               Garbage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **0.00** |
|               Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **0.00** |
|               Cable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **14.00** |
| Home Maintenance (repairs and upkeep) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **0.00** |
| Food . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **400.00** |
| Clothing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **50.00** |
| Laundry and dry cleaning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **0.00** |
| Medical and dental expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **0.00** |
| Transportation (not including car payments) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **120.00** |
| Recreation, clubs and entertainment, newspapers, magazines, etc. . . . . . . . . . . . . . . . . . . . . . . . . | | **100.00** |
| Charitable contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **0.00** |
| Insurance (not deducted from wages or included in home mortgage payments) | | |
|               Homeowner's or renter's . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **0.00** |
|               Life . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **0.00** |
|               Health . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **0.00** |
|               Auto . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **0.00** |
| Taxes (not deducted from wages or included in home mortgage payments) (specify) | | **0.00** |
| Installment payments (in chapter 12 & 13 cases, do not list payments to be included in the plan) | | **0.00** |
| Alimony, maintenance, and support paid to others . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **0.00** |
| Payments for support of additional dependents not living at your home . . . . . . . . . . . . . . . . . . . . . . . . | | **0.00** |
| Regular expenses from operation of business, profession, or farm (attach detailed statement) . . . . . . . . . . . | | **0.00** |
| **MISC. HYGENE**                                 . . . . . . | | **100.00** |

| | |
|---|---:|
| **TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules)** . . . . . . . . | **1,634.00** |

(The penalty for making a false statement or concealing property is a fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. secs. 152 and 3571.)

## DECLARATION

I, **MARTHA JEAN BARIGIAN**, named as debtor in this case, declare under penalty of perjury that I have read the foregoing *Summary and Schedules*, consisting of *21* sheets (including this declaration), and that it is true and correct to the best of my information and belief.

Signature: _Martha Jean Barigian_
        **MARTHA JEAN BARIGIAN**
  Date: _March 22, 1994_

10

In re: **BARIGIAN, MARTHA JEAN**
        Debtor

SV 94-14622 GM
Case No. (if known)

## SCHEDULE A - REAL PROPERTY

| Description and location of property | Current market value of debtor interest in the property without deducting any secured claim or exemption |
|---|---|
| Nature of debtor's interest in property | Amount of secured claim |

*None*

Total:      **0.00**

In re: **BARIGIAN, MARTHA JEAN**

SV 94-14622 GM

Debtor

Case No. (If known)

## SCHEDULE B - PERSONAL PROPERTY

| Type of property | Current market value of debtor's interest in property without deducting any secured claim or exemption |
|---|---|
| Description and location of property | |

**1.  Cash on hand.**
  *None*

**2.  Checking, savings, or other financial accounts, certificates of deposits, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives.**
  *None*

**3.  Security deposits with public utilities, telephone companies, landlords, and others.**
  *None*

**4.  Household goods and furnishings, including audio, video, and computer equipment.**

  *ASSORTED USED FURNITURE*     Debtor interest:     1,500.00
  **Owner:** *Debtor*
  **Location:** *In debtor possession.*

**5.  Books, pictures, and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles.**

  *ASSORTED USED QUILTS*     Debtor interest:     1,500.00
  **Owner:** *Debtor*
  **Location:** *In debtor possession.*

**6.  Wearing apparel.**

  *ASSORTED USED CLOTHING*     Debtor interest:     500.00
  **Owner:** *Debtor*
  **Location:** *In debtor possession.*

**7.  Furs and jewelry.**
  *None*

**8.  Firearms and sports, photographic, and other hobby equipment.**
  *None*

**9.  Interests in insurance policies.**
  *None*

**10.  Annuities.**
  *None*

**11.  Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans.**
  *None*

**12.  Stock and interests in incorporated and unincorporated businesses.**
  *None*

12

13. Interests in partnerships or joint ventures.
   *None*

14. Government and corporate bonds and other negotiable and non-negotiable instruments.
   *None*

15. Accounts receivable.
   *None*

16. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled.
   *None*

17. Other liquidated debts owing debtor including tax refunds.
   *None*

18. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property.
   *None*

19. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust.
   *None*

20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.
   *None*

21. Patents, copyrights, and other intellectual property.
   *None*

22. Licenses, franchises, and other general intangibles.
   *None*

23. Automobiles, trucks, trailers, and other vehicles or accessories.
   *None*

24. Boats, motors, and accessories.
   *None*

25. Aircraft and accessories.
   *None*

26. Office equipment, furnishings, and supplies.
   *None*

27. Machinery, fixtures, equipment, and supplies used in business.
   *None*

28. Inventory.

13

**Page 2**

In re: **BARIGIAN, MARTHA JEAN**
Debtor

SV 94-14622 GM
Case No. (if known)

None

29. **Animals.**
None

30. **Crops - growing or harvested.**
None

31. **Farming equipment and implements.**
None

32. **Farm supplies, chemicals, and feed.**
None

33. **Other personal property of any kind not already listed.**
None

**Total:**          3,500.00

14

Page 3

In re: **BARIGIAN, MARTHA JEAN**
<br>Debtor

SV 94-14622 GM

Case No. (if known)

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTORS

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete and label a separate schedule of expenditures.

| | | |
|---|---|---:|
| Rent or home mortgage payment (include lot rented for mobile home) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 500.00 |
| Are real estate taxes included? Yes_____ No ✓ | | |
| Is property insurance included? Yes_____ No ✓ | | |
| Utilities: Electricity and heating fuel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 25.00 |
| Water and sewer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 125.00 |
| Telephone . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 200.00 |
| Garbage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 0.00 |
| Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 0.00 |
| Cable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 14.00 |
| Home Maintenance (repairs and upkeep) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 0.00 |
| Food . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 400.00 |
| Clothing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 50.00 |
| Laundry and dry cleaning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 0.00 |
| Medical and dental expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 0.00 |
| Transportation (not including car payments) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 120.00 |
| Recreation, clubs and entertainment, newspapers, magazines, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 100.00 |
| Charitable contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 0.00 |
| Insurance (not deducted from wages or included in home mortgage payments) | | |
| Homeowner's or renter's . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 0.00 |
| Life . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 0.00 |
| Health . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 0.00 |
| Auto . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 0.00 |
| Taxes (not deducted from wages or included in home mortgage payments) (specify) | | 0.00 |
| Installment payments (in chapter 12 & 13 cases, do not list payments to be included in the plan) | | 0.00 |
| Alimony, maintenance, and support paid to others . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 0.00 |
| Payments for support of additional dependents not living at your home . . . . . . . . . . . . . . . . . . . . . . . . . . | | 0.00 |
| Regular expenses from operation of business, profession, or farm (attach detailed statement) . . . . . . . . . . . | | 0.00 |
| **MISC. HYGENE** . . . . . . | | 100.00 |

**TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules)** . . . . . . . . . | **1,634.00**

(The penalty for making a false statement or concealing property is a fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. secs. 152 and 3571.)

## DECLARATION

I, **MARTHA JEAN BARIGIAN**, named as debtor in this case, declare under penalty of perjury that I have read the foregoing *Summary and Schedules*, consisting of *22* sheets (including this declaration), and that it is true and correct to the best of my information and belief.

Signature: _____
<br>        **MARTHA JEAN BARIGIAN**

Date: _____

15